

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 50163 | DATE | 9/30/2002 |
| CASE TITLE | Peppers vs. Climco Coils Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated on the reverse Memorandum Opinion and Order, defendant's motion for summary judgment is granted. Defendant's motion to file an overlength reply brief is moot. This case is dismissed in its entirety.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | SEP 3 0 2002 | |
| | Notified counsel by telephone. | | date docketed | 18 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 02 SEP 30 AM 11:11 | | |
| /LC | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# MEMORANDUM OPINION AND ORDER

Plaintiff, Jackie Lilly (née Peppers), has filed a single-count complaint against defendant, Climco Coils Co. ("Climco"), claiming that Climco demoted her in violation of the Pregnancy Discrimination Act, as codified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k) ("PDA"). Jurisdiction and venue are proper under 42 U.S.C. § 2000e-5(f)(3). Before the court is Climco's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56.[1]

As an initial matter, the court summarily rejects Peppers' argument that a "favorable" (a characterization that itself is rather dubious, as discussed below) performance evaluation conducted shortly after her demotion constitutes direct evidence of Climco's discrimination. She does not at all explain, and the court is at a loss to understand, how such an evaluation proves, *without reliance upon inference or presumption*, Climco demoted her because she was pregnant. See Lim v. Trustees of Ind. Univ., 297 F.3d 575, 580 (7th Cir. 2002). Peppers' attempt to torture the case law, such as Giacoletto v. Amax Zinc Co., 954 F.2d 424 (7th Cir. 1992), to the contrary is not well taken.

Peppers is thus left with the familiar McDonnell Douglas burden-shifting method of proving discrimination. But even under this framework Peppers' claim suffers from a number of flaws. First, Peppers has insufficient evidence to create a genuine question of fact over whether Scott Selmon, Climco's president and the relevant Climco decision maker responsible for demoting Peppers, knew about her pregnancy at the time of her demotion. See Clay v. Holy Cross Hosp., 253 F.3d 1000, 1005 (7th Cir. 2001) (part of first step of prima facie case in PDA claim is that employer knew plaintiff was pregnant). Although Selmon admits he learned about Peppers' pregnancy after he demoted her, Peppers suggests he must have known about it beforehand because her immediate supervisor, Rich Woodman, and Selmon's immediate subordinate, Don Davis, each knew about it and they were, in Peppers' words, in the "chain of authority." But she cannot dispute both Woodman's and Davis' deposition testimony that neither of them, once they found out about her pregnancy, ever told Selmon about it. (LR 56.1(a) ¶ 26) Peppers thus has absolutely no basis to impute their knowledge of her pregnancy to Selmon. Alternatively, Peppers relies on the fact that one day after she stood up to stretch and complained out loud to herself about back pain, Selmon said something nearby like, "I guess it wasn't such a good idea." But to infer from this that Selmon knew about her pregnancy – i.e., that "it" referred to Peppers' getting pregnant – is pure conjecture. Selmon testified by affidavit he made this comment when he overloaded a paper hole puncher that was located just behind Peppers' desk. (Def. Exh. 29, Selmon Aff. ¶¶ 2-3) Putting aside Selmon's own explanation, though, Peppers never says she was noticeably pregnant at the time Selmon made this statement, or that she herself referred to her pregnancy when she complained about the back pain, so the "it" in Selmon's "it wasn't such a good idea" comment, even assuming it was directed at Peppers, could have meant anything. To conclude that Selmon was specifically referring to Peppers' pregnancy is thus a speculative, and not a reasonable, inference.

But even assuming Selmon knew about Peppers' pregnancy, Peppers' prima facie case still fails because she has not shown similarly situated non-pregnant employees were treated more favorably than her. See Clay, 253 F.3d at 1005. She does point to two other women, Sherry Widener and Deb Lange, who held office-type positions and did some of the same tasks as her, such as typing, answering phones, filing, and photocopying. (LR 56.1(b) ¶¶ 17-19) The difference, however, is that these were Peppers', but not Widener's or Lange's, primary job duties. Widener was primarily responsible for accounts receivable and human resources issues; Lange, on the other hand, was primarily responsible for accounts payable. (LR 56.1(a) ¶ 47; LR 56.1(b) Def. Resp. ¶ 16) Moreover, while Peppers received in her most recent performance evaluation a "poor" rating in the "Quality of Work" category (out of eight different categories) and an overall rating of "fair," neither Widener nor Lange received a single "poor" rating in their evaluations during the same time period, and received overall ratings of "very good" and "good," respectively. (LR 56.1(b) Def. Resp. ¶¶ 13-14) Thus, because of the significant differences in their job duties and quality of work, Peppers has failed to show that Widener and Lange were similarly situated to her.

Finally, assuming *arguendo* Peppers has met her prima facie case, she cannot rebut as a pretext Climco's stated reason for demoting her: her poor work performance as a secretary. To show an employer's stated reason for taking an adverse employment action against an employee is a pretext, the employee must introduce sufficient evidence that the employer did not honestly believe that was the true reason. See Franzoni v. Hartmarx Corp., 300 F.3d 767, 772 (7th Cir. 2002). In this case, Peppers specifically admits the following fact in Climco's statement of facts: "The consensus among management was that Peppers was neither an accurate nor a reliable secretary." (LR 56.1(a) ¶ 16) (This fact is also supported by citations to the record.) In the face of such an admission, it would seem impossible for Peppers to disprove that Selmon honestly believed Peppers was doing a poor job as a secretary and that is why he demoted her to a factory position. Worse yet, Peppers admits she made numerous and repeated typographical and data entry mistakes in putting together various weekly and monthly reports, and failed to convey certain telephone messages to Selmon, some of which were from customers. (Id. ¶¶ 13-15, 17-19) Instead, Peppers points out only that a few of the mistakes were not her fault, Selmon and the other supervisors could not remember specific examples of her errors, and there were no written warnings in her personnel file documenting all of these mistakes. In the court's opinion, however, these are all red herrings. Peppers admits she made most of the mistakes and failed to convey the phone messages. More importantly, none of her evidence shows Selmon did not honestly believe she made these mistakes and failed to convey the phone messages. And that is all that matters.

For the reasons stated above, Climco's motion for summary judgment is granted. This case, which Peppers supported with only the flimsiest of evidence and the weakest of arguments, is hereby dismissed in its entirety.

---

[1] Climco also filed a motion to file an oversized reply brief. But because Climco's brief was only 11 pages long, and Local Rule 7.1 allows briefs up to 15 pages without court permission, the court considers this motion moot.

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

Jackie Peppers

v.

Climco Coils Company

**JUDGMENT IN A CIVIL CASE**

Case Number: 01 C 50163

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that defendant's motion for summary judgment is granted. Defendant's motion to file an overlength reply brief is moot. This case is dismissed in its entirety.

All orders in this case are now final and appealable.

Michael W. Dobbins, Clerk of Court

Date: 9/30/2002

Susan M. Wessman, Deputy Clerk